THE STATE v. TOM FRENCH, Appellant.—300 S. W. 793.

Division Two, December 12, 1927.

*North. T. Gentry*, Attorney-General, and *H. O. Harrawood*, Special Assistant Attorney-General, for respondent.

620

HENWOOD, C.—An information was filed in the Circuit Court of Wayne County by which appellant was charged with the unlawful sale of one quart of "hootch," "moonshine" and "corn whiskey." The jury found him guilty and assessed his punishment at imprisonment in the penitentiary for three years. Following judgment and sentence on the verdict, he appealed.

The State's case was made on the testimony of five boys or young men, who lived in the town of Greenville, in Wayne County. It was Hallowe'en in Greenville, being the evening of October 31, 1925, and these adventurous merry-makers felt sure that some liquor would add to the charms of the occasion. Apparently, they thought of appellant as being associated with the liquor business. Wilford Alman and Cortez Hedge saw appellant at Latham's garage and arranged to get a quart of whiskey from him. He told them to meet him "down by the bridge." At this time, their chums, Freman Martin, Leslie Pigg and Jess Pigg, were waiting across the street. Shortly thereafter, when all of these boys had gathered "down by the bridge," a car passed and someone in the car said to them, "Go down to the Mercantile." They knew it was appellant who said this, by his voice, though it was then "about nine-thirty" and dark. Alman and Hedge followed the car and met appellant at the "back end" of the Mercantile Store. There, appellant delivered to them a quart fruit jar filled with liquor, which he poured from a gallon

jug, and Alman handed him $2.50 in exchange for the same. All of these boys contributed to the liquor fund and all of them met at the "Flour Mill" and shared in the consumption of it. Some of them indulged more freely than others. Hedge drank too much and went home for relief. The others boasted of less intoxicating effects and were able to attend "the dance" and other entertainments. Hedge was sixteen years of age and Martin was twenty-one. The ages of Alman and the Pigg brothers do not appear, but all were referred to as boys at the trial, and it does appear that Alman and Hedge were attending school in Greenville. Hedge said he had never tasted whiskey before, but this liquor "had a kind of a strong burning taste to it," and that it made him "pretty drunk." Alman and Martin both testified it was "moonshine," and that it tasted like whiskey.

Appellant took the stand and admitted that he saw these boys that evening and that they asked him if he had any whiskey, but denied that they got any whiskey from him. He said he passed by the Mercantile Store about four o'clock in the afternoon, but was not around there that evening. On cross-examination, he admitted that he had been previously convicted for the unlawful possession of whiskey in Wayne County and spent "quite awhile" in jail for that offense. Harry Schrum and Walter Stephens were the only additional witnesses in appellant's behalf. They both testified that they were with appellant from about four o'clock in the afternoon until about ten or eleven o'clock that night, but, strange to say, they were not questioned by counsel for either side of the case as to the alleged whiskey transaction between appellant and the boys. Schrum said he was with appellant "practically all the time." Stephens said appellant "might have been away a few minutes." Both said that they were with appellant at Latham's garage that night, but nothing was said by either of them about the Mercantile Store.

In rebuttal for the State, Leslie Pigg and Jess Pigg testified that neither Schrum nor Stephens was with appellant when they saw him at the Mercantile Store that night.

No brief has been filed for appellant, but we have carefully examined the assignments of error in his motion for a new trial.

I. The complaints directed against the sufficiency of the evidence cannot be seriously considered. The testimony of Wilford Alman and Cortez Hedge, as to the sale of the "moonshine" to them by appellant, was direct and positive. They were strongly corroborated by Freman Martin, Leslie Pigg and Jess Pigg, who were "down at the bridge" when appellant drove by in a car and said, "Go down to the Mercantile," and who were near by when appellant turned over the fruit jar of liquor to Alman and

Hedge and took the $2.50 in payment for it. Moreover, appellant's own admission, that these boys came to him and asked for whiskey on the evening in question, further corroborated them, in part. The testimony of Hedge, Alman and Martin as to the character of the liquor was not challenged by a single objection on behalf of appellant, nor was their knowledge of such matters tested in any degree by cross-examination. This evidence not only made a case for the jury, but is amply sufficient to support their verdict. [State v. Sissom, 278 S. W. 704.]

II. The motion for a new trial asserts that the verdict is cruel, unusual and oppressive and in violation of Section 25 of Article II, of the Constitution of Missouri. It further asserts that the verdict is the result of passion and prejudice and is not warranted by the facts proven in the case.

The maximum punishment prescribed by the statute for this offense is five years' imprisonment, or two years more' than the punishment assessed by the jury in this case. [Sec. 21, Laws 1923, p. 242.] The constitutionality of this statute cannot be attacked collaterally, nor can the question be raised for the first time in a motion for a new trial. The fixing of the punishment for crime is a legislative and not a judicial function, and where, as in this case, the punishment assessed is within the limits of the statute, it cannot be adjudged to be cruel, unusual or oppressive, unless the statute involved is held to be violative of the Constitution upon proper presentation of that question. [State v. Alexander, 285 S. W. 984.]

We find nothing in the record upon which to base the charge of passion and prejudice on the part of the jury. In this situation, such a charge is of no avail. [State v. Helpley, 279 S. W. 701; State v. Renfro, 279 S. W. 702.] Doubtless, the jury was impressed with the gravity of appellant's act in selling intoxicating liquor to school boys in their teens, and the disastrous results of such a practice, if tolerated, not only to the boys so neglected, but to the community and to society in general. Even in the days when the sale of intoxicating liquors for beverage purposes was sanctioned by law, the youth of the land were protected and heavy penalties were prescribed and actually assessed by courts and juries against persons found guilty of selling intoxicants to minors. The action of the jury in this case was clearly within their rights, and we do not hesitate to say that the punishment assessed was fully warranted by the facts.

III. The only other grounds for a new trial assigned in the motion relate to the admission and exclusion of evidence and the instructions given to the jury. These assignments are general in char-

acter and do not specify "in detail and particularity" the matters complained of. Under the present rule, they present nothing for our review. [Laws 1925, p. 198; State v. Standifer, 289 S. W. 856; State v. Murrell, 289 S. W. 859.]

After an examination of the entire record, we find no error. The judgment is affirmed. *Higbee* and *Davis*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.